# EXHIBIT 19

**DuaneMorris®**

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
LOS ANGELES
CHICAGO
HOUSTON
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
BALTIMORE
BOSTON
WASHINGTON, DC
LAS VEGAS
ATLANTA
MIAMI
PITTSBURGH
NEWARK
WILMINGTON
PRINCETON
LAKE TAHOE

GREGORY P. GULIA
DIRECT DIAL: 212.692.1027
E-MAIL: gpgulia@duanemorris.com

www.duanemorris.com

April 10, 2007

**BY FEDEX AND**
**EMAIL (sales@boybutterlubes.com and eyal@boybutterlubes.com )**

Mr. Eyal Feldman
President
B.B.L. LLC
23679 Calabasas Road # 676
Calabasas, CA 91301

Re:     Objection to Infringement by B.B.L. LLC

Mr. Feldman:

We are intellectual property counsel to Unilever Supply Chain, Inc. and Conopco, Inc. dba Unilever (collectively, "Unilever"), manufacturers and owners of the famous SHEDD'S SPREAD COUNTRY CROCK®, CHURN STYLE™ and I CAN'T BELIEVE IT'S NOT BUTTER!® brand products and trademarks. We are writing to you concerning your company's unauthorized use of the SHEDD'S SPREAD COUNTRY CROCK®, CHURN STYLE™ and I CAN'T BELIEVE IT'S NOT BUTTER!® trademarks, logos, trade dress, copyrights, and distinctive and proprietary creative concepts, themes and visual content featured in the SHEDD'S SPREAD COUNTRY CROCK® "Talking Hands" television commercials (collectively, the "Unilever Intellectual Property"). Your company's deliberate and deceptive use of the Unilever Intellectual Property violates our client's intellectual property rights in its federally registered and common law trademarks, logos, trade dress, and copyrighted materials. We demand that your company and any affiliates, business partners, and others acting in concert with you and/or your company immediately cease and desist from any further use of the Unilever Intellectual Property.

As you are aware, Unilever's COUNTRY CROCK®, CHURN STYLE™ and I CAN'T BELIEVE IT'S NOT BUTTER!® brand products constitute two of the most successful and popular brands of vegetable oil spreads in the United States and elsewhere. Unilever and/or its predecessors have been using the COUNTRY CROCK® marks and I CAN'T BELIEVE IT'S NOT BUTTER!® marks (collectively, "COUNTRY CROCK®, CHURN STYLE™ and I CAN'T BELIEVE IT'S NOT BUTTER!® Marks") for over 25 years. Our client's COUNTRY CROCK®, CHURN STYLE™ brand products feature our client's distinctive trade dress and

DUANE MORRIS LLP

1540 BROADWAY   NEW YORK, NY 10036-4086                PHONE: 212.692.1000   FAX: 212.692.1020

DuaneMorris

Mr. Eyal Feldman
April 10, 2007
Page 2

logo, printed on a plastic tub, including the mark COUNTRY CROCK depicted in solid, stylized lettering and printed at a semi-elliptical angle. Above the COUNTRY CROCK mark, the mark SHEDD'S SPREAD appears in solid lettering superimposed over a solid-colored oval, which is surrounded on the right and left sides by two distinctive designs. Underneath the COUNTRY CROCK mark, there is a large banner in blue and yellow featuring the mark "CHURN STYLE." Beneath the banner, there is an illustration in blue coloring of a woman using a churn which appears within a semi-circle. Our client's I CAN'T BELIEVE IT'S NOT BUTTER!® brand products feature our client's distinctive logo consisting of, among other things, the mark I CAN'T BELIEVE IT'S NOT BUTTER! depicted in a stylized lettering which is printed at an angle. The mark I CAN'T BELIEVE IT'S NOT BUTTER! is printed in blue lettering against a yellow background and surrounded by the outline of an ellipsis—with a thin solid-red colored swirl forming the top half of the ellipsis and a thick solid-red colored banner forming the bottom half. The I CAN'T BELIEVE IT'S NOT BUTTER products are marketed and sold in plastic tubs and squeeze containers.

Unilever and/or its predecessors have invested significant amounts of time, effort and many millions of dollars developing and marketing the products sold under the COUNTRY CROCK® and I CAN'T BELIEVE IT'S NOT BUTTER!® brands and the trademarks and trade dress therefor. Such efforts include the famous and award-winning "Talking Hands" advertising campaign which consists of a series of television commercials featuring visual imagery of a couple's hands and voice-over dialogue depicting the playful interactions of a couple as the couple discusses COUNTRY CROCK® brand products and other topics. This award-winning advertising campaign has been broadcast nationwide on network and cable television for many years and garnered widespread critical acclaim and public recognition. In addition to these promotional and advertising efforts, Unilever and/or its predecessors have taken great care to control the quality of their products and services so that when consumers see the Unilever Intellectual Property, they know that the products and services marketed and sold in connection therewith will be of the highest quality.

As a result of these efforts, sales of the products sold under the COUNTRY CROCK®, CHURN STYLE™ and I CAN'T BELIEVE IT'S NOT BUTTER!® Marks have been enormous and the Unilever Intellectual Property is exceedingly famous. Further, the Unilever Intellectual Property (including the famous COUNTRY CROCK® and I CAN'T BELIEVE IT'S NOT BUTTER!® trademarks) are covered by numerous federal trademark registrations including incontestable registrations Nos. 1,257,722, 1,281,767, 1,509402, and 2011836 for a variety of products including vegetable oil spread.

Your company's BOY BUTTER products feature product packaging and logos which are confusingly similar to our client's Unilever Intellectual Property. Such similarities include, but are not limited to, the following common elements: (i) the use of "CHURN STYLE"; (ii) the use

DuaneMorris

Mr. Eyal Feldman
April 10, 2007
Page 3

of an illustration of a person using a churn; (iii) the use of an illustration of a sun with rays of light radiating from the sun; (iv) the placement, angle and font of the logos; (v) the similar use, appearance and placement of the banners and oval designs containing terminology; (vi) the use of similar color schemes; and (vii) similar product containers.

It has recently come to our client's attention that your company has expanded its willful infringement of our client's intellectual property through the introduction of a new infringing product variant and television advertising campaign. Specifically, we have learned that your company has introduced a new variant of its personal lubricants –the YOU WON'T BELIEVE IT'S NOT BOY BUTTER product line. In addition to the numerous infringing elements listed in the preceding paragraph, the YOU WON'T BELIEVE IT'S NOT BOY BUTTER products also feature a product name and logo which are confusingly similar to our client's I CAN'T BELIEVE IT'S NOT BUTTER! product name and logos.

We have also learned that your company intends to broadcast a television commercial on several major cable channels in New York and Los Angeles, including, Bravo, Oxygen, E! and Logo, which infringes the Unilever Intellectual Property. Your company's television commercial misappropriates distinctive and proprietary creative concepts, themes and visual content taken from our company's famous "Talking Hands" commercials by depicting familiar scenes of a couple's hands as the couple's voice-over dialogue narrates a discussion regarding your company's personal lubricant products. Not only does your company's television commercial misappropriate distinctive and proprietary creative concepts, themes and visual content taken from our company's famous and copyrighted "Talking Hands" commercials, but your company's commercial features and advertises the infringing products that we discussed above.

Your company's conduct is a clear attempt to trade on the goodwill and reputation of our client's Unilever Intellectual Property. Indeed, you plainly admit in several interviews promoted on your website that your company adopted its infringing trade dress and trademarks with the deliberate intention of capitalizing upon our client's "iconic" logos, and valuable goodwill and intellectual property: "I took an economics class in high school. We had a lesson on American logos that have been around for so long that they are iconic and people are comfortable with them. I took two logos—Arm & Hammer and Country Crock—and combined elements of both" and "I came up with the idea to merge two very popular logos like Shedd Spread and Baking Soda." Print-outs of these articles are attached to this letter as Exhibit 1. We also note that there has also been significant press coverage discussing the confusing similarity of your company's product packaging to our client's product packaging and regarding your company's copying of our client's "iconic" advertising campaign. Print-outs of these articles are attached to this letter as Exhibit 2.

DuaneMorris

Mr. Eyal Feldman
April 10, 2007
Page 4

Such unauthorized use of the Unilever Intellectual Property infringes our client's exclusive rights in its valuable intellectual property and constitutes trademark infringement, trade dress infringement, unfair competition, trademark dilution, trade dress dilution and copyright infringement in violation of federal, state and common law. Under these circumstances, our client would be entitled to not only immediate and permanent injunctive relief against your continued infringement, but also to recovery of profits, statutory damages and treble damages. See 15 U.S.C. § 1117(a). In light of your company's willful infringement of our client's intellectual property rights, relief would also likely include recovery of our client's attorney's fees and costs incurred in connection with litigating the matter.

Given the serious nature of this matter, on behalf of our client, we demand that you and/or your company: (i) immediately and permanently cease all use of the Unilever Intellectual Property and any name, mark, logo, trade dress or artwork confusingly similar to or incorporating any intellectual property belonging to our client; (ii) immediately and permanently cease all broadcast of the infringing television advertisement; and (iii) provide us with your written undertaking that your company will comply with these demands by close of business **April 12, 2007**. If you fail to respond, or refuse to comply, our client will take all appropriate legal action against you to protect its valuable intellectual property rights.

This notification and demand is made without prejudice to any of our client's rights, all of which are expressly reserved.

Very truly yours,

Gregory P. Gulia

GPG/slj
Attachments

DM2\1107026.1